# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| EDWARD F. MCCOY, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 21-00091-CV-W-WBG ) |
| KILOLO KIJAKAZI,<br>Acting Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) |

## ORDER AND OPINION AFFIRMING THE ACTING COMMISSIONER'S FINAL DECISION DENYING BENEFITS

Pending is Plaintiff Edward F. McCoy's appeal of Defendant Acting Commissioner of Social Security's final decision denying his applications for disability insurance benefits and supplemental security income. After carefully reviewing and considering the record and the parties' arguments, the Acting Commissioner's decision is **AFFIRMED**.

## I. BACKGROUND

Plaintiff was born in 1981 and has at least a high school education. R. at 116-17, 701, 898, 900. His past relevant work includes millwright, metal fabricator, garbage collection driver, and a composite job of truss assembler and forklift driver. R. at 116, 720-21. In July 2018, Plaintiff protectively filed applications for disability insurance benefits and supplemental security income, alleging a disability onset date of June 30, 2017. R. at 106, 898-910. His applications were denied, and his request for reconsideration was also denied. R. at 779-99. Plaintiff asked for a hearing before an administrative law judge ("ALJ"). R. at 800.

In March 2020, ALJ Robert A. Kelly conducted a telephone hearing. R. at 694-727. Thereafter, on June 17, 2020, the ALJ issued his decision finding Plaintiff is not disabled. R. at

106-18. He concluded Plaintiff suffers from the severe impairments of "lumbar degenerative joint disease, depression, anxiety, and schizophrenia." R. at 110. Additionally, the ALJ found Plaintiff has the residual functional capacity ("RFC") to perform light work, as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with the following additional limitations:

> [H]e can occasionally stoop, kneel, crouch, crawl, or climb; he is limited to simple, routine, and repetitive work tasks with no more than occasional simple work-related decisions, problem solving, and use of independent judgment; he can tolerate only occasional interaction with supervisors, co-workers and the general public; due to limitations in maintaining focus, attention and concentration, he may be off-task for as much as 5% of the workday; and he can perform no work in an environment that allows direct access to drugs such as work in a hospital or pharmacy or in the cannabis industry.

R. at 112. Based on his review of the record, the RFC determination, and the hearing testimony, the ALJ concluded Plaintiff could work as a marking clerk, routing clerk, and small product assembler. R. at 117.

In August 2020, Plaintiff requested the Social Security Administration's ("SSA") Appeals Council review the ALJ's decision. R. at 895-97. In correspondence dated September 18, 2020, the Appeals Council invited Plaintiff to submit "additional evidence that . . . is new, material, and relates to the period on or before the date of the hearing decision." R. at 96. Plaintiff was also advised that he must show "there is a reasonable probability that the additional evidence would change the outcome of the decision" and "good cause for why [he] missed informing [the SSA] about or submitting it earlier." *Id*. He was informed the Appeals Council would not act for twenty-five days. *Id*.

Plaintiff's counsel submitted additional evidence for the Appeals Council's consideration.[1] Doc. 30 at 18-19; R. at 124-626, 630-93. On December 10, 2020, the Appeals Council denied the

---

[1] On December 9, 2020, Plaintiff's counsel faxed more evidence to the Appeals Council. R. at 11-95. These records were submitted several weeks after the extended deadline for additional evidence and one day before the Appeals Council issued its decision in this matter. R. at 4-11, 96-97.

2

request to review the ALJ's decision and found the additional evidence "does not show a reasonable probability that it would change the outcome of the decision." R. at 4-11. Plaintiff now appeals to this Court. Doc. 3.

## II. STANDARD OF REVIEW

Judicial review of the Commissioner's decision is a limited inquiry into whether substantial evidence supports the findings of the Commissioner and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Turpin v. Colvin*, 750 F.3d 989, 992-93 (8th Cir. 2014). "Legal error may be an error of procedure, the use of erroneous legal standards, or an incorrect application of the law." *Collins v. Astrue*, 648 F.3d 869, 871 (8th Cir. 2011) (citations omitted). An ALJ "may not silently disregard" duly promulgated regulations by the SSA. *Brueggemann v. Barnhart*, 348 F.3d 689, 694 (8th Cir. 2003). A failure to follow applicable regulations constitutes legal error. *See id.* at 695. No deference is owed to the ALJ's legal conclusions. *Id.* at 692. A challenge to the procedures used by the ALJ is reviewed de novo. *See id.*

Regarding sufficiency of the evidence, a reviewing court must affirm the Commissioner's decision if it is supported by substantial evidence in the record as a whole. *Igo v. Colvin*, 839 F.3d 724, 728 (8th Cir. 2016). The threshold for such evidentiary sufficiency is not high. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support a conclusion." *Noerper v. Saul*, 964 F.3d 738, 744 (8th Cir. 2020) (citation omitted).

"As long as substantial evidence supports the ALJ's decision, [a reviewing court] may not reverse because substantial evidence also 'would have supported a contrary outcome, or because [the court] would have decided the case differently.'" *Winn v. Comm'r, Soc. Sec. Admin.*, 894 F.3d 982, 987 (8th Cir. 2018) (quoting *Andrews v. Colvin*, 791 F.3d 923, 928 (8th Cir. 2015)). In

evaluating for substantial evidence, a court must consider evidence supporting and detracting from the Acting Commissioner's decision. *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012) (citation omitted). "If, after reviewing the record, it is possible to draw two inconsistent positions, and the Commissioner adopted one of the positions, [the court] must affirm." *See id*. (citation omitted). This Court "will disturb the ALJ's decision only if it falls outside the available zone of choice." *Kraus v. Saul*, 988 F.3d 1019, 1024 (8th Cir. 2021) (citation omitted). A decision does not fall "outside the zone of choice simply because this Court might have reached a different conclusion had we been the initial finder of fact." *Id*. (citation and internal quotation marks omitted).

### III. DISCUSSION

Plaintiff contends the Acting Commissioner's decision must be reversed because (A) the ALJ's RFC is legally flawed and not supported by substantial evidence, and (B) the ALJ failed to demonstrate Plaintiff can perform work. Doc. 15 at 30-43. Plaintiff also suggests the record, including additional evidence submitted to the Appeals Council, is inconsistent with the ALJ's decision. *Id*. at 37-38.

**A.     The ALJ's RFC**

Regarding the ALJ's RFC, Plaintiff argues (1) the ALJ erred in assessing the exertional level first and failing to provide a function-by-function analysis, (2) the physical functional limitations are not supported by substantial evidence, and (3) the mental functional limitations are not supported by substantial evidence. *Id*. at 30-39. One's RFC is the "most you can still do despite your limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The ALJ must base the RFC on "all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations." *McKinney v. Apfel*,

4

228 F.3d 860, 863 (8th Cir. 2000). The RFC "must be supported by some medical evidence" but does not need to "be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016).

### (1) Exertional Level Assessment and Function-by-Function Analysis

Plaintiff maintains the ALJ incorrectly assessed his exertional level first and failed to provide a function-by-function analysis, thereby violating an SSA policy interpretation ruling. Doc. 15 at 38-39. Per the policy interpretation ruling, the RFC provides an assessment of a person's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis"[2] and identifies the person's functional limitations and restrictions. Soc. Sec. Admin., Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8p, 1996 WL 374184, at *1-2 (July 1, 1996). The ALJ may not "simply describe the RFC in general terms" but is not required to "mechanically list and reject every possible limitation." *McCoy v. Astrue*, 648 F.3d 605, 615 (8th Cir. 2011) (citation and internal quotation marks omitted); *Depover v. Barnhart*, 349 F.3d 563, 567 (8th Cir. 2003). This Court reviews the record to ensure "an ALJ does not disregard evidence or ignore potential limitations." *Nash v. Comm'r, Soc. Sec. Admin.*, 907 F.3d 1086, 1090-91 (8th Cir. 2018) (citation omitted).

### (a) Plaintiff's Physical Conditions

When Plaintiff applied for benefits, he was asked to list all physical conditions limiting his ability to work, but he did not list any physical conditions. R. at 932. However, during the hearing before the ALJ, Plaintiff mentioned pain in his back, extremities, shoulders, elbows, hands, and

---

[2] "[R]egular and continuing basis" is defined as "8 hours a day, for 5 days a week, or an equivalent work schedule." Soc. Sec. Admin., Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8p, 1996 WL 374184, at *1 (July 1, 1996).

stomach; nausea; Lyme's disease; chronic fatigue; muscle fatigue; and dizziness. R. at 706-10, 715-16, 718. The ALJ found Plaintiff suffered from one severe physical impairment: lumbar degenerative joint disease. R. at 110.

In his brief, Plaintiff does not specify what, if any, physical condition or limitations related thereto the ALJ overlooked in assessing the RFC. *See* Doc. 15 at 38-39. Yet, in his reply brief, Plaintiff suggests fibromyalgia, "residuals" of Rocky Mountain Fever, and chronic fatigue syndrome could impact his ability to sit, stand, walk, push, or pull. Doc. 30 at 16-17. But this argument ignores the ALJ's finding that no evidence confirmed a diagnosis of Rocky Mountain Spotted Fever or fibromyalgia. R. at 114.[3] He also disregards the ALJ's finding that his fatigue complaints were intermittent, and there was "no other diagnosis . . . [to] explain alleged fatigue." R. at 110. Regardless, Plaintiff does not appeal the ALJ's non-severe findings related to these physical impairments. *See* Doc. 15.

### (b) The ALJ's Assessment of Plaintiff's Physical Limitations

The record demonstrates the ALJ evaluated Plaintiff's physical limitations and assessed his abilities to perform work activities. *See* R. at 110-16. He considered, among other things, Plaintiff's hearing testimony, his Function Report, medical records, medical opinions, and objective medical findings (or lack thereof). *See id*. While Plaintiff complained of daily back pain, the ALJ observed reports of back pain were intermittent, no diagnostic testing revealed a neurological problem, musculoskeletal examinations were often normal, treatment was minimal,

---

[3] Plaintiff maintains "objective laboratory tests" confirm he has or had Rocky Mountain Spotted Fever. Doc. 30 at 16 (citing R. at 999, 1003-04, 1008). It appears Plaintiff was tested for Rocky Mountain Spotted Fever more than a year before his alleged disability onset date. *See* R. at 1003. While the results are not entirely clear, it appears one test was positive for Rocky Mountain Spotted Fever. R. at 1003-04, 1008. The record, however, does not include more recent results or the status of said infection. Regarding fibromyalgia, Plaintiff cites a portion of one record to establish his diagnosis. Doc. 30 at 15-16 (citing R. at 133). Specifically, he points to a physician's finding, which occurred after the hearing before the ALJ, that Plaintiff was "[t]ender to palpation at 18 of 18 tender points" along his spine. R. at 133. However, no diagnosis of fibromyalgia is mentioned by the medical provider. *See* R. at 133-34.

6

gait was described as normal, and examination findings were mixed. R. at 113-14 (citing Ex. 1F/6-7) (R. at 1003-04); 2F/21 (R. at 1033); 3F/10 (R. at 1059); 4F/11 (R. at 1086); 7F/4-5, 9, 18 (R. at 1192-93, 1197, 1206); 10F/5, 7, 11 (R. at 1229, 1231, 1235); R. at 115 (noting the "mild nature of the evidence related to" Plaintiff's back pain); *see also* R. at 1006, 1009, 1017, 1023, 1048, 1054, 1065, 1091, 1157 (observing normal gait). The ALJ also noted Plaintiff can prepare simple foods, do laundry, vacuum, take out small trash, travel by walking or using public transportation, shop in stores, and attends church. R. at 112, 115 (citing Ex. 5E (R. at 951-59)).[4]

When determining the physical limitations in the RFC, the ALJ also relied on the medical opinion of State agency consultant Susan Courtnage, M.D. R. at 116. Dr. Courtnage opined Plaintiff could occasionally lift and/or carry twenty pounds, frequently lift and/or carry ten pounds, stand and/or walk for a total of six hours in an eight-hour workday, sit for a total of six hours in an eight-hour workday, and was not limited with regard to the operation of hand and/or foot controls. R. at 758-59, 771-72. These limitations are akin to the definition of "light work," which "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and requires "a good deal of walking or standing" or "sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. §§ 404.1567(b), 416.967(b). Dr. Courtnage also opined Plaintiff was limited to occasionally stooping, kneeling, crouching, crawling, and climbing ramps, stairs, ladders, ropes, and scaffolds. R. at 758-59, 771-72.

Based on the foregoing evidence, the ALJ determined Plaintiff can perform light work but was further limited in his ability to stoop, kneel, crouch, crawl, and climb. R. at 113-15. Further, the ALJ set forth an RFC that was well-defined, and he did not disregard evidence or ignore

---

[4] The record indicates Plaintiff occasionally used a cane; however, the ALJ found no evidence of an assistive device being prescribed. R. at 113-114 (citing Ex. 7F/9 (R. at 1197); 10F/5 (R. at 1229)). The Court observes Plaintiff, in his Function Report, stated no one had prescribed a walking aid. R. at 957.

potential limitations. The Eighth Circuit recently rejected a similar argument that the ALJ violated SSR 96-8p for failing to assess the RFC on a function-by-function basis. *Nash*, 907 F.3d at 1090-91; *see also Menter v. Kijakazi*, No. 6:20-CV-003198-DGK-SSA, 2022 WL 188146, at *2 (W.D. Mo. Jan. 20, 2022). By finding that Plaintiff can perform light work as defined by the applicable regulation with a number of limitations as outlined above, the RFC was not so vague or general so as to prevent the undersigned from determining whether Plaintiff's RFC is supported by substantial evidence. Accordingly, the Court finds no merit to Plaintiff's argument that the ALJ erroneously assessed Plaintiff's exertional level first and/or failed to conduct a function-by-function analysis.

**(2)   Physical Limitations in the ALJ's RFC**

Plaintiff avers the physical limitations in the ALJ's RFC are not supported by substantial evidence because the ALJ improperly relied on Dr. Courtnage's opinion. Doc. 15 at 36-38.[5] Under the applicable regulations, no single medical opinion or source is given specific evidentiary weight, including controlling weight. 20 C.F.R. §§ 404.1520c(a), 416.920c(a).[6] Instead, the ALJ evaluates the persuasiveness of medical opinions by considering five factors: supportability,[7] consistency,[8] relationship with the claimant (including length, extent, and purpose of treatment relationship; frequency of examinations; and whether there is an examining relationship), specialization, and "other factors that tend to support or contradict a medical opinion . . . ." *Id.* §§ 404.1520c(a), 404.1520c(c)(1)-(5), 416.920c(a), 416.920c(c)(1)-(5). When evaluating a medical opinion's

---

[5] Plaintiff's argument that Dr. Courtnage did not have the benefit of "the bulk of the relevant evidence" when she rendered her opinion is addressed *infra*, section III(C). Doc. 15 at 36-37.

[6] Because Plaintiff filed his applications after March 27, 2017, 20 C.F.R. §§ 404.1520c and 416.920c apply.

[7] "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).

[8] "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

persuasiveness, supportability and consistency are the "most important factors." *Id*. §§ 404.1520c(a), 416.920c(a).

An ALJ must articulate how persuasive he finds all medical opinions. *Id*. §§ 404.1520c(b), 416.920c(b). Three "articulation requirements" must be satisfied. *Id.* §§ 404.1520c(b)(1)-(3), 416.920c(b)(1)-(3). First, "when a medical source provides multiple medical opinion(s) . . . [the ALJ] will articulate how [he or she] considered the medical opinions . . . from that medical source together in a single analysis using the factors" identified above. *Id*. §§ 404.1520c(b)(1), 416.920c(b)(1). Second, the ALJ must "explain how [he or she] considered the supportability and consistency factors for a medical source's medical opinions." *Id*. §§ 404.1520c(b)(2), 416.920c(b)(2). Third, when the ALJ finds "two or more medical opinions . . . about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same, [the ALJ] will articulate how [he or she] considered the other most persuasive factors" set forth above. *Id*. §§ 404.1520c(b)(3), 416.920c(b)(3).

The ALJ found Dr. Courtnage's opinion, which is detailed above, was persuasive because it was "supported by the evidence and [is] consistent with the record." R. at 116. Thus, the ALJ properly articulated why he deemed Dr. Courtnage's opinion persuasive, and his conclusion is supported by substantial evidence in the record. Nonetheless, Plaintiff contends Dr. Courtnage's opinion is not "substantial evidence" because she did not treat or examine him. Doc. 15 at 36-37. This argument disregards the applicable regulations. An ALJ considers all medical opinions and articulates how the opinions were considered. 20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a)-(b). A medical source's relationship with the claimant is one of several factors considered by the ALJ, and it is not one of the most important factors. *Id.* §§ 404.1520c(a)-(c), 416.920c(a)-(c). Because

the ALJ properly articulated the bases for finding Dr. Courtnage's opinion persuasive, her opinion may be considered substantial evidence.

**(3)     Mental Limitations in the ALJ's RFC**

Plaintiff contends the RFC's mental limitations are not supported by substantial evidence. Doc. 15 at 30-36.  He argues (a) the RFC failed to include a limitation related to "detailed instructions," (b) the RFC failed to account for Plaintiff's moderately limited ability to complete a normal workday and workweek and perform at a consistent pace, (c) State agency consultants' opinions do not constitute substantial evidence, and (d) the ALJ erred in discounting a treating psychologist's opinion.  *Id.*

**(a)     Detailed Instructions**

State agency consultants E. Lessans, Ph.D. and Anthony Gensterblum, Ph.D. opined Plaintiff's ability to understand, remember, and carry out detailed instructions is moderately limited.  R. at 733, 742-43, 760, 773.  In addition, they both concluded Plaintiff was not significantly limited in his ability to make simple work-related decisions or understand, remember, and carry out simple instructions. R. at 733-34, 742-43, 760-61, 773-74.  Based on the consultants' opinions, the ALJ limited Plaintiff to "simple, routine, and repetitive work tasks with no more than occasional simple work-related decisions, problem solving, and use of independent judgment."  R. at 112.  Plaintiff avers the ALJ failed to explain why he did not adopt the consultants' opinions as to detailed instructions and why the RFC conflicts with the consultants' opinions.  Doc. 15 at 30.

Plaintiff's arguments fail for several reasons.  First, the ALJ was not required to adopt the entirety of the consultants' opinions.  *Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011) (citation omitted).  Second, Plaintiff does not establish how the consultants' opinions conflict with the RFC, which limits him to, among other things, simple, routine, and repetitive work.  R. at 112.  This

particular limitation in the RFC is modeled after the consultants' opinions. *Compare* R. at 112, *with* R. at 733-34, 742-43, 760-61, 773-74. Third, the ALJ properly articulated why he found each consultant's opinion supported by and consistent with the record. R. at 115-16. Fourth, there is "no direct conflict between" being able to perform simple, routine, repetitive work with the "identification of occupations involving instructions that, while potentially detailed, are not complicated or intricate." *Galloway v. Kijakazi*, 46 F.4th 686, 690 (8th Cir. 2022) (citation omitted). Finally, to the extent the RFC is inconsistent with the consultants' opinions, the inconsistency does not rise to the level of reversible error. *See Chismarich v. Berryhill*, 888 F.3d 978, 980 (8th Cir. 2018) (citation omitted).

### (b) Complete a Normal Workday/Workweek and Keep Consistent Pace

Next, Plaintiff alleges the RFC failed to encompass the consultants' opinions that he is moderately limited in his ability to complete a normal workday and workweek without being interrupted by psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods. Doc. 15 at 31 (citing R. at 734, 760). The ALJ's RFC provided for the following: "due to limitations in maintaining focus, attention and concentration," Plaintiff "may be off-task for as much as 5% of the workday." R. at 112. Accordingly, the ALJ accounted for Plaintiff being off task and having difficulty maintaining focus, attention, and concentration. Plaintiff neither explains why the RFC conflicts with the consultants' opinions nor cites evidence in the record demonstrating a greater limitation.

### (c) Consultants' Opinions as Substantial Evidence

Like his argument related to Dr. Courtnage, Plaintiff claims the consultants' opinions do not constitute substantial evidence because neither personally examined Plaintiff. Doc. 15 at 31. This argument fails. As explained above, an ALJ considers all medical opinions and explains how

11

the opinions were considered. 20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a)-(b). A medical source's relationship with a claimant is one factor the ALJ contemplates, but it is not one of the most important factors. *Id.* §§ 404.1520c(a)-(c), 416.920c(a)-(c).

Here, the ALJ found the consultants' opinions persuasive because they were "supported by the evidence" and "consistent with the record." R. at 115-16 (citing 1A (R. at 728-36), 2A (R. at 737-46), 5A (R. at 751-63), and 6A (R. at 764-76)). The ALJ properly articulated why he found the consultants' opinions persuasive and supported. Thus, he properly considered the consultants' opinions, and their opinions constitute substantial evidence.

### (d) Opinion of Jerry Morris, Psy.D.

Plaintiff asserts the ALJ incorrectly found Dr. Morris's opinion was unpersuasive. Doc. 15 at 32-35. The ALJ explained, "[w]hile [Dr. Morris's] opinion may be supported by [his] own examination of the claimant, it is inconsistent with the record as a whole which shows the claimant is less limited." R. at 116. He also discounted Dr. Morris's opinion because the record "contains mostly normal mental status examination findings, there is a lack of psychotropic medication compliance, and the claimant engages in a wide range of daily activity. . . ." *Id.* He also observed Dr. Morris's opinion "does not offer a function-by-function analysis of the claimant's mental limitations" but provides "generalized statements about the claimant's difficulties." *Id.*

The ALJ properly considered the record and resolved the conflict between the mostly normal mental status examinations and Dr. Morris's opinion. *See Lawrence v. Saul*, 970 F.3d 989, 996 (8th Cir. 2020) (observing the ALJ is to resolve conflict among medical opinions); *Pennell v. Kijakazi*, No. 21-06112-CV-SJ-WJE, 2022 WL 2188966, at *4 (W.D. Mo. June 17, 2022) (holding the ALJ properly found medical opinions were unpersuasive because they were contrary to, among other things, "normal mental status findings"). The mental status examinations before the ALJ

were normal or identified few mental limitations. *See* R. at 1017-18, 1022-23, 1030, 1033-34, 1047-48, 1054, 1064-65, 1091, 1157.

In addition, the ALJ appropriately contemplated Plaintiff's daily activities when assessing what weight to afford Dr. Morris's opinion. *See Reece v. Colvin*, 834 F.3d 904, 910 (8th Cir. 2016) (holding evidence in the record, including the claimant's daily activities, were contrary to a physician's opinion). As mentioned *supra*, Plaintiff prepares simple meals, performs some household chores, travels by walking and using public transportation, shops in stores on a weekly basis, attends church, and mentors people online. R. at 115.

Finally, the ALJ may consider Plaintiff's noncompliance with medication when determining how persuasive a medical opinion is.[9] *See Grindley v. Kijakazi*, 9 F.4th 622, 632 (8th Cir. 2021). Moreover, Dr. Morris included Plaintiff's adherence problem with medication twice in his report. R. at 1102-03. He also opined the appointment of a guardian should be considered if Plaintiff "consistently acts out or is non-adherent with medications and psychotherapy." R. at 1103. When evaluating Dr. Morris's opinion, the ALJ properly examined Plaintiff's noncompliance with medication as well as Dr. Morris's statements regarding same.[10] For the foregoing reasons, the Court finds substantial evidence in the record supports the ALJ's decision finding Dr. Morris's opinion unpersuasive.

---

[9] Plaintiff argues the ALJ violated Social Security Ruling 16-3p when considering noncompliance. Doc. 15 at 35-36. Pursuant to SSR 16-3p, which clarifies how a claimant's subjective complaints are examined, an ALJ "may consider" several factors, including whether the claimant may not be able to afford treatment, when examining subjective complaints. Soc. Sec. Admin., Titles II and XVI: Evaluation of Symptoms in Disability Claims, SSR 16-3p, 2017 WL 5180304, at *9-10 (Oct. 25, 2017). In this appeal, Plaintiff's subjective complaints are not at issue. *See* Doc. 15.

[10] Also, because Plaintiff does not indicate (or demonstrate) he was denied treatment due to lack of insurance, the ALJ could properly consider his noncompliance. *See Osborne v. Barnhart*, 316 F.3d 809, 812 (8th Cir. 2003).

B.  **Plaintiff's Ability to Perform Work**

When determining whether a person disabled, the SSA assesses whether a claimant can make an adjustment to work other than past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). To assist in this determination, an ALJ "may use the services of a vocational expert or other specialist." *Id*. §§ 404.1566(e), 416.966(e). If a vocational expert ("VE") provides evidence, the ALJ must ask about any possible conflict between the VE's evidence and information in the Dictionary of Occupational Titles ("DOT").[11] Soc. Sec. Admin, Policy Interpretation Ruling: Titles II and XVI: Use of Vocational Expert & Vocational Specialist Evidence, and Other Reliable Occupational Information in Disability Decisions, SSR 00-4p, 2000 WL 1898704, at *4 (Dec. 4, 2000). If there is an "apparent unresolved conflict," an ALJ cannot rely on the VE's evidence to support a determination that someone is not disabled unless (1) the VE provides "a reasonable explanation for the conflict," and (2) the ALJ explains why he or she relied on the VE's testimony rather than the DOT information. *Id*. at *2, 4; *see Welsh v. Colvin*, 765 F.3d 926, 930 (8th Cir. 2014).

During the hearing in this matter, a VE was questioned by the ALJ and Plaintiff's counsel. R. at 720-25. She was asked if a hypothetical individual with Plaintiff's RFC, as formulated by the ALJ, and Plaintiff's age, education, and work experience would be able to work. R. at 722-23. The VE testified the person would be able to work in "light, unskilled, SVP 2" jobs. R. at 723. Specifically, she identified three jobs: marking clerk (DOT 209.587-034), routing clerk (DOT 222.687-022), and small product assembler I (DOT 706.684-022). *Id*.

---

[11] The SSA takes administrative notice of "reliable job information available" in governmental and other publications, including the DOT. 20 C.F.R. §§ 404.1566(d)(1), 416.966(d)(1).

14

Case 4:21-cv-00091-WBG   Document 32   Filed 09/28/22   Page 14 of 20

Based on her review of the job tasks in the DOT, the VE testified the three jobs did not require interaction with the public. R. at 723. Regarding interaction with coworkers, the VE stated the job tasks indicated "no tandem tasks." *Id*. In the VE's professional opinion, interaction with coworkers would occur no more than occasionally. *Id*. She also testified that the DOT did not address interaction with supervisors, but she opined a person in the three jobs would have no more than occasional interaction with a supervisor after a brief period of training. R. at 723-24. At the conclusion of the hearing, the ALJ asked if her testimony, unless otherwise specified, was consistent with the DOT. R. at 725. The VE answered in the affirmative. *Id*.

The ALJ relied on the VE's testimony and found Plaintiff could work as a marking clerk, routing clerk, and small products assembler. R. at 117. He explained the VE's testimony was consistent with the DOT "except she used her education and experience as a vocational expert when testifying to matters not covered by the DOT including social interaction and off-task time." *Id*. Plaintiff argues the VE's testimony about the small products assembler job was inconsistent with the DOT, and by relying on the VE's testimony, the ALJ failed to establish Plaintiff can work. Doc. 15 at 40-42.

The ALJ precluded Plaintiff from more than occasional interaction with coworkers and supervisors. R. at 112. Due to this limitation, Plaintiff argues he cannot work as a small products assembler because the job requires "frequently working at a bench as a member of an assembly group and passing units to co-workers" and working "under direct and concrete supervision." Doc. 15 at 42. Plaintiff identifies no regulation, case law, or anything else to support his argument that the job requires more than occasional interaction with coworkers and supervisors.

The DOT general description for the small products assembler position does not specify the amount of interaction the person would have with coworkers or supervisors. *See* Assembler,

15

Small Products I, No. 706.684-022, Dictionary of Occupational Titles (4th ed. 1991). In addition to the portions highlighted by Plaintiff, the general description indicates talking is "[n]ot [p]resent" and taking instructions and helping people are not significant. *Id*. These descriptions suggest interaction, particularly interactions involving speaking, are minimal.

Fortunately, Appendix B to the DOT sheds additional light on the job's relationship to, among other things, people. App. B, Dictionary of Occupational Titles (4th ed. 1991). Per Appendix B, the fifth digit of an occupation's DOT code reflects the job's relationship to people. *Id*. This digit identifies "the highest appropriate function" for each job. *Id*. For a small products assembler, the fifth digit is 8, which means "[a]ttending to the work assignment instructions or orders of supervisor. (No immediate response required unless clarification of instructions or orders is needed.) Helping applies to 'non-learning' helpers." *Id*. When comparing the VE's testimony with the information in the DOT and appendix thereto, the Court finds no apparent conflict. Rather, the VE provided evidence that supplemented the information in the DOT. For this reason alone, Plaintiff's argument fails. *See also Crum v. Colvin*, No. C14-4055-MWB, 2015 WL 5084325, at *8 (N.D. Iowa Aug. 27, 2015) (finding the small parts assembler job does not require more than minimal interaction with coworkers).

Even if the ALJ erred in finding Plaintiff was able to work as a small products assembler, Plaintiff does not argue he is unable to work as a marking clerk or routing clerk. The Acting Commissioner must establish "a significant number of jobs (in one or more occupations)" "exists in the national economy" and satisfies the claimant's RFC. 20 C.F.R. §§ 404.1566(b), 416.966(b). According to the VE and ALJ, more than 2 million marking clerk jobs exist nationally, and more than 600,000 routing clerk jobs exist nationally. R. at 117, 723. The Court concludes substantial evidence in the record supports a finding that a sufficient number of jobs exist. *See Welsh*, 765

F.3d at 930 (concluding 330 jobs statewide satisfied the sufficient number of jobs requirement); *Barraza v. Berryhill*, No. 17-CV-00685-W-DGK, 2018 WL 4027043, at *4 (W.D. Mo. Aug. 23, 2018) (finding more than 250,000 positions nationwide fulfilled the Commissioner's burden to establish there was a sufficient number of jobs). Accordingly, the Acting Commissioner satisfied her burden of establishing Plaintiff can work.

**C.     Review of Entire Record/New Evidence Submitted to the Appeals Council**

The foregoing discussion encompasses the arguments distinctly raised in Plaintiff's brief. *See* Doc. 15 at 30-43. His brief, however, could be construed as raising another argument, albeit a perfunctory and underdeveloped one. Nonetheless, the Court addresses it.

Regarding Dr. Courtnage's opinion, Plaintiff emphasizes the opinion was "not based on the full record" because she did not have "the bulk of the relevant evidence." Doc. 15 at 36-37. By way of background, Plaintiff obtained Medicaid roughly one month before the hearing, and as a result, obtained more treatment. *Id*. at 37. He argues these later records, which were submitted to the Appeals Council, show his physical impairments significantly worsening and likely would have changed Dr. Courtnage's opinion and the ALJ's decision. *Id*. at 37-38.[12]

---

[12] It is uncertain if Plaintiff's argument also contends the ALJ erred in refusing to admit certain records that were submitted after the hearing. *See* Doc. 15. If he is raising this argument, it would fail. Plaintiff and his counsel were directed to inform the ALJ about evidence or submit all evidence at least five business days before the hearing. R. at 802, 816, 861, 868. The "five-day rule," as it is commonly called, requires a claimant "**make every effort** to ensure" the ALJ timely received or was informed of all evidence. 20 C.F.R. §§ 404.935(a), 416.1435(a) (emphasis added). If not timely submitted, the ALJ will not accept the evidence unless the claimant satisfies one of the rule's exceptions. *Id*. §§ 404.935(b)(1)-(3), 416.1435(b)(1)-(3). The three exceptions are (1) the SSA's actions misled the claimant; (2) the claimant's "physical, mental, educational, or linguistic limitation(s)" prevented him from informing the ALJ about or submitting evidence earlier; or (3) an "unusual, unexpected, or unavoidable circumstance beyond" the claimant's control prevented him from informing the ALJ about or submitting evidence earlier. *Id*. Examples of an "unusual, unexpected, or unavoidable circumstance beyond" a claimant's control include but are not limited to serious illness, death of an immediate family member, records destroyed or damaged by fire, or the claimant "actively and diligently sought evidence from a source and the evidence was not received or was received less than 5 business days prior to the hearing." *Id*. §§ 404.935(b)(3)(i)-(iv), 416.1435(b)(3)(i)-(iv). In this matter, Plaintiff fails to establish he made every effort to ensure the ALJ timely received or was informed of all evidence, and he does not demonstrate he met an exception to the five-day rule.

Because the Appeals Council considered the new evidence but denied Plaintiff's request to review the ALJ's decision, this Court "must determine whether the ALJ's decision was supported by substantial evidence on the record as a whole, including the new evidence." *Davidson v. Astrue*, 501 F.3d 987, 990 (8th Cir. 2007). Plaintiff's counsel submitted a significant volume of records[13] to the Appeals Council. R. at 4-11, 124-43, 145-301, 519-25, 630-93.[14] Below, the Court summarizes and provides examples from the evidence submitted to the Appeals Council.

**(1)   Physical Impairments**

The later records demonstrate Plaintiff's pain improved anywhere from "a little better" to 70% with epidural steroid injections. R. at 134, 136-37, 139, 228, 520. Also, prescription pain medications and muscle relaxers improved his condition. *See* R. at 169 (Plaintiff "recently filled a prescription" to help his pain and now "feels he can move around more and possibly accomplish more physical tasks."); 236 (muscle relaxers have reduced his pain "from a 10 to a 4"); 240 (muscle relaxers relieved "some of the pain" and "tremendously" improved his mental state).

Plaintiff's gait worsened as of April 9, 2020, and his medication was increased. *See* R. at 520-24. Five days later, Plaintiff reported he was "very tired and sore from doing a lot of waslking [sic] the day before." R. at 202. In May 2020, it was noted that Plaintiff was utilizing a wheelchair for mobility. R. at 136. That same day, he received an epidural injection from which he reported a 70% improvement in symptoms one week later. R. at 131, 134, 136-139.

---

[13] Many of the records do not appear to be medical records. For example, several records are authored by a person identified as a "peer specialist." *See, e.g.*, R. at 145-47, 150-51, 157, 182, 185-88, 191-96, 202-08, 212-13, 218-19, 224-25, 228-30, 239-40, 242-46, 249, 259-62, 265, 269-70. Without the individual's credentials or additional information, it appears the individual is not an acceptable medical source. 20 C.F.R. §§ 404.1502(a), 416.902(a).

[14] Duplicates and some triplicates of these records are also included in the record. *See* R. at 302-518, 527-626.

18

During the hearing before the ALJ, Plaintiff testified he had to have surgery, and if he did not "receive surgery soon," he would "end up in a wheelchair." R. at 706. A record from two months after the hearing conflicts with his testimony. According to the record, Plaintiff informed his physician that a neurosurgeon did not see an urgent need for surgery and recommended he try more conservative treatments. R. at 136. Either Plaintiff's condition improved since the hearing, or his condition was not as severe as he testified.

**(2)     Mental Impairments**

Regarding his mental health, numerous records indicate Plaintiff continues to be oriented as to date, time, and/or place. *See, e.g.*, R. at 150, 155, 157, 163-64, 170-73, 175-77, 180, 182, 186-87, 189, 192, 194, 196, 199, 201-04, 207-08, 212-13, 215, 217-20, 222, 224, 226, 228, 231, 233-35, 239-40, 242, 246-47, 249, 252-54, 259, 266, 276, 279, 287-88, 290-91, 299-300. Additionally, two medical providers reported largely normal mental status examinations. R. at 133-34, 138.[15] There are instances where Plaintiff reported feeling anxious, depressed, upset, angry, and nervous. R. at 158, 160, 204, 212-13, 219, 226, 235, 242-45, 261, 276. But there are several records indicating Plaintiff felt happy, his depressed mood lifted, he was "well rested and energized," "appeared to be in a mostly positive mood," was in "great spirits," was sleeping better, was hopeful about the future, felt "better about himself and his ability to accomplish daily tasks and responsibilities," believed he was better equipped to be working, and reported feeling good or better and having "good" days. R. at 169-70, 187, 199, 220, 226, 261, 276, 279, 286, 288.

---

[15] Additionally, the records that counsel belatedly submitted to the Appeals Council reveal Plaintiff's generally normal mental status examinations. *See* R. at 33 (oriented and cooperative); R. at 65, 67 (cooperative, euthymic mood, appropriate affect, fully oriented, intact memory, fair judgment and insight, and appropriate thought content), R. at 69 (cooperative, neutral mood, appropriate affect, fully oriented, intact memory, fair judgment, good insight, and appropriate thought content); R. at 77 (cooperative, anxious mood, appropriate affect, fully oriented, intact memory, fair insight, and appropriate thought content); R. at 83 (cooperative, depressed mood, blunted affect, fully oriented, intact memory, fair judgment, poor insight, and appropriate though content).

The additional records reviewed by the Appeals Council reveal Plaintiff's back and leg pain persist but have responded well to conservative treatment. Further, while Plaintiff's mental health has declined at times, the records show his mental health impairments are no more severe – and possibly less severe – than they were when the ALJ issued his decision based on the record before him. Based on its review of the additional records submitted to the Appeals Council and the record as a whole, the Court finds the ALJ's decision is supported by substantial evidence.

## IV. CONCLUSION

For all the foregoing reasons, the Court finds the Acting Commissioner's decision is supported by substantial evidence on the record as a whole, and the correct legal standards were applied. Accordingly, the Acting Commissioner's decision is **AFFIRMED**.

**IT IS SO ORDERED.**

DATE: September 28, 2022                 _/s/ W. Brian Gaddy_
W. BRIAN GADDY
UNITED STATES MAGISTRATE JUDGE